JOSEPHINE ANNINO, Appellant, *v.* CITY OF UTICA, Respondent, Impleaded with Another.

Argued October 6, 1937; decided November 23, 1937.

*Salvador J. Capecelatro* for appellant. The metal tripod and flare maintained as a warning signal by the city of Utica constituted an insufficient and dangerous appliance, as well as a hazard to the traveling public. (*Johnson* v. *State*, 186 App. Div. 389; *City of Buffalo* v. *Halloway*, 7 N. Y. 493; *Storrs* v. *City of Utica*, 17 N. Y. 104; *Wilson* v. *City of Troy*, 135 N. Y. 96; *Gastel* v. *City of New York*, 194 N. Y. 18; *Burrows* v. *Livingston-Niagara Power Co.*, 244 N. Y. 548; *O' Neill* v. *City of Port Jervis*, 253 N. Y. 423; *Parnell* v. *Holland Furnace Co.*, 260 N. Y. 604; *Kalinowski* v. *Truck Equipment Co.*, 237 App. Div. 472.) The evidence to establish negligence on the part of the city of Utica presented a question of fact for the determination of the jury. (*Terry.* v. *Village of Perry*, 199 N. Y. 79; *Fordham* v. *Gouverneur Village*, 160 N. Y. 541; *Butler* v. *Village of Oxford*, 186 N. Y. 444; *Walsh* v. *Central New York Tel. & Tel. Co.*, 75 App. Div. 1; *Donnelly* v. *City of Rochester*, 166 N. Y. 315; *Snowden* v. *Town of Somerset*, 171 N. Y. 99; *McGettigan* v. *N. Y. C. R. R. Co.*, 268 N. Y. 66; *Corcoran* v. *City of New York*, 188 N. Y. 131.)

*Bartle Gorman, Corporation Counsel* (*M. Francis Malone* of counsel), for respondent. The city of Utica was not guilty of negligence and the Appellate Division properly reversed the judgment. (*Carlson* v. *City of New York*, 150 App. Div. 264; *Parker* v. *City of Cohoes*, 10 Hun, 531; 74 N. Y. 610; *McFeeters* v. *City of New York*, 102 App. Div. 32; *Gedroice* v. *City of New York*, 109 App. Div. 176; *McDonald* v. *Degnon-McLean Contracting Co.*, 124 App. Div. 824; *Gastel* v. *City of New York*, 194 N. Y. 15; *Johnson* v. *City*, 208 N. Y. 77.)

Rippey, J. Plaintiff recovered a verdict for personal injuries received through the negligence of the city of Utica in the erection and maintenance of an obstruc-

tion in one of the city streets. Judgment entered upon the verdict was reversed by the Appellate Division on questions of law only and the complaint dismissed, with costs. It was held as matter of law that there was no evidence upon which a charge of negligence against the city could be sustained. In so deciding, the Appellate Division was, we think, in error.

The accident happened at about 7:05 o'clock on the evening of September 16, 1934. Defendant George Comstock was driving his automobile easterly along the southerly side of Whitesboro street in the city of Utica at about twenty miles per hour during a heavy downpour of rain when his car collided with a metal tripod erected by the city over a manhole which was under repair. Plaintiff was his guest and was sitting on his right on the front seat. When the collision occurred, a burning flare, resting unattached on the top of the tripod, was thrown over the hood of the automobile and through the windshield and struck plaintiff in the face. Neither Comstock, plaintiff, nor others in the automobile saw the tripod or the flare before the collision. The legs of the tripod were black. The ball of the flare was eight inches in diameter and was also black. The wick of the flare gave off a dim, flickering, yellowish, smoking flame about one inch long, blown by a strong wind in the direction in which the car was moving.

Whitesboro street was one of the main thoroughfares of the city over which traffic was heavy. Automobiles, with headlights burning, were passing along the street from the east. At least one car was parked along the southerly curb near the manhole. The street was thirty-four feet wide between curbs with a surface of dark material, and the center of the manhole was twelve and three-tenths feet north from the south curb directly in the path of east-bound traffic. The iron cover of the manhole was two and three-tenths feet in diameter. For two or more days before the accident the city had

been engaged in repairing broken pavement around the manhole. It had placed the tripod over the manhole and broken pavement and had maintained and kept it there later to keep traffic from passing over the repaired pavement until the cement might dry. The bottom of each leg of the metal tripod resting on the pavement extended twenty-eight inches from a point directly underneath the center of the flare, and extended over and beyond the repaired pavement. Thus there was twelve feet of space between the burning flare and the curb, but if one of the legs protruded to the south of the flare the space in which to pass without striking the tripod was reduced to nine and one-half feet. With an automobile parked on the south curb near the tripod an operator would experience difficulty in safely passing around the tripod on the right even in daylight and under the best of weather conditions. Safe passage around the obstruction would be extremely hazardous in a severe rainstorm and at night, especially where adequate and proper guarding and lighting of the obstruction were lacking. There was no guard rail around the obstruction. The tripod was equipped with a hook directly underneath the center of the flare. It was so designed and placed that a red lantern might be hung between the legs of the tripod. The hook was there for the express purpose of holding such a light. There was testimony of the watchman who was charged with the duty of setting up the tripod and of seeing that it was properly lighted to the effect that he had hung a red lantern on the hook some four days before the accident. Evidence was given by him, although contradictory and uncertain, from which an inference might be drawn that the lantern was left by him hanging on the hook and lighted at four o'clock on the afternoon preceding the accident. Against this was the testimony of a number of witnesses to the effect that no such lantern was there immediately preceding or at the time of the accident. The jury were authorized to

find, and on this appeal we must assume that they did find, that there was no such light. Even had there been such a light, it still would have been a question of fact for the jury as to whether, under all the circumstances of the case, the defendant exercised that care required of it in lighting and guarding the tripod.

Evidence was admitted to show that the tripod was struck twice by passing automobiles shortly before the accident. While testimony of prior accidents, without other " evidence of such a fundamental condition of the thing under scrutiny as will at least permit the inference that the party complained of has failed to discharge the duties reasonably and fairly imposed on him by law," would be insufficient to charge the city with negligence in the erection and maintenance of the obstruction, it was properly received and might be " utilized for the purpose of showing that tested by actual experience it has proved dangerous and naturally calculated to cause accidents." (*Gastel* v. *City of New York*, 194 N. Y. 15, 18.)

The city owed to the public the absolute duty of keeping its streets in a reasonably safe condition for travel (*Storrs* v. *City of Utica*, 17 N. Y. 104), and was bound to exercise reasonable care to accomplish that end (*Brusso* v. *City of Buffalo*, 90 N. Y. 679). That principle of law is applicable whether the danger arises from an unguarded excavation made by the municipality (*Brusso* v. *City of Buffalo, supra; Wilson* v. *City of Troy*, 135 N. Y. 96) or from an obstruction placed by the corporation upon the street (*Whitney* v. *Town of Ticonderoga*, 127 N. Y. 40). The obstruction constituted a defect in the street. No question of notice of the dangerous situation is in the case, for the city itself erected and maintained the obstruction. The fact that it was not a permanent obstruction is of no consequence. The jury have found that the obstruction as erected and maintained, though temporary, was inherently dangerous and that an accident,

such as occurred in the case at bar, might occur and was reasonably foreseeable in the exercise of ordinary care. The law " imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care." (*Beltz* v. *City of Yonkers,* 148 N. Y. 67, 71.)

This court said in *Durr* v. *N. Y. C. & H. R. R. R. Co.* (184 N. Y. 320, 324): " It is only when the defect is so slight that no careful or prudent man would reasonably anticipate any danger from its existence, and when it could only have been guarded against by the exercise of extraordinary care and foresight, that the question of responsibility therefor is one of law." The defect, in the case at bar, was not slight nor was extraordinary care required to prevent accidents. Upon the evidence in this case, it became a question of fact for the jury as to whether the defendant was negligent and as to whether its negligence was the proximate cause of the accident. No other question is open for our consideration.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.