■ Lovely Boyd, Appellant, v. State of New York, Respondent. Virginia Bromley, Appellant, v. State of New York, Respondent.

Goldman, J., (dissenting). In these claims against the State of New York arising out of an automobile collision at the intersection of Route 31, a State highway, and Marsh Road, a county highway, in Monroe County, the precise question is whether, although either or both of the drivers of the cars were negligent, the State was also negligent in its maintenance of a stop sign and other signs and in its failure adequately to warn drivers of a dangerous intersection, and if so, whether the State's negligence was a proximate and concurrent cause of the accident.

The claimants were passengers seated in the front seat of a car operated by one Florence Felton in a southerly direction on Marsh Road. The other car involved in the accident was being operated by one Margaret Manning in an easterly direction on Route 31. Marsh Road runs in a northerly and southerly direction while Route 31 runs in an easterly and westerly direction. Marsh Road is macadam, 20 feet in width, and for a distance of from 300 feet north of the intersection is on a slight downgrade toward the intersection. The pavement of Route 31 is concrete for a distance of about 800 feet west of the intersection and 20 feet in width.

Photographs show what faced a driver going south on Marsh Road as he neared the intersection with Route 31. There were three signs and a mailbox preceding the stop sign in the following sequence.

(1) An intersection sign about 300 feet north of the intersection with arrows which indicate that the driver is approaching an intersection but fails to indicate whether the intersecting road is a major highway. It should be noted

that the intersection sign on Route 31 as it approaches Marsh Road indicated by its arrows that Route 31 is the major highway and that its driver had the right of way. (2) A broken soft shoulder sign about 50 feet north of a school bus sign. (3) A school bus sign, indicating that it was unlawful to pass a school bus, about 200 feet north of the intersection. (4) A mailbox about 110 feet from the center of the intersection. (5) The standard stop sign itself, in the northwest quadrant of the intersection, about 70 feet from the center line of the intersection, the sign having a yellow background with black letters and bearing the words " STOP " and " THROUGH TRAFFIC ". It was 3 feet off the ground and about 5½ to 6 feet from the west edge of the pavement. In respect of Route 31, about 475 feet west of the center of the intersection there were two reflectorized warning signs consisting of a standard intersection sign and a 35 miles per hour sign, each placed one above the other on the same standard.

The Court of Claims dismissed the complaints herein, after a consolidated trial, on the grounds that the proximate cause of the accident was the negligence of one or both of the drivers and that the State was not negligent. On the other hand, it is the claimants' position that the stop sign in the northwest quadrant was not erected in conformity with the standards and specifications of the Manual of Uniform Traffic Control Devices of the New York State Traffic Commission. The claimants also contend that the sign as erected constituted inadequate warning of the conditions at the interestion and that the number and placement of signs preceding the stop sign presented a cluttered and obstructed view of the stop sign. The trial court determined that the non-conformance of the stop sign did not contribute to the cause of the accident; that the sign was not obscured but was visible to a careful driver 200 to 300 feet away and was readable at a distance of from 50 to 75 feet; that the sole cause of the accident was Miss Felton's preoccupation in conversation with her passengers which prevented her from seeing the sign she should have seen; and that neither prior accident history nor the results of traffic counts and obedience experience demanded any different traffic control.

In 1952, the State replaced the button stop sign for southbound traffic on Marsh Road by an R-1a sign in contravention of a provision of the 1951 revision of the Manual directing that an R-1 stop sign be placed in rural areas. An R-1 stop sign, which is half a foot larger than the R-1a sign, had been placed on the southeast corner sometime in 1952 or 1953. The State directive of 1948 is clear in providing that existing signs may be continued in use until no longer serviceable at which time they were to be replaced by signs conforming to the standards set forth in the Manual. The State undertook jurisdiction of the Marsh Road stop sign and when it replaced that sign in 1952 it should have conformed to the Manual requisites. Although the State did not have complete jurisdiction on Marsh Road, a county highway, once it assumed some control of the county road, pursuant to the then existing Vehicle and Traffic Law (§ 95-d; repealed L. 1957, ch. 698, § 5), concomitant with that jurisdiction was the responsibility of seeing to it that all traffic control devices on the county road effectively warned those approaching the intersection of danger (*Barna* v. *State of New York*, 293 N. Y. 877). There were other signs on Marsh Road preceding the stop sign which detracted from the value of that sign and the State is responsible for this detraction and inadequacy and cannot shed responsibility for the other signs on the ground that it did not erect them.

The fact that both drivers may have been negligent and that the State's negligence alone was not enough to cause the accident does not relieve the State of its duty if its breach contributed to the accident along with the drivers' negligence (*De Haen* v. *Rockwood Sprinkler Co.*, 258 N. Y. 350; *Foley* v. *State of New York*, 294 N. Y. 275).

The record demonstrates that the State violated its own Traffic Commission requirements in replacing the sign; that shrubbery and trees in the northwest quadrant presented limited sight distance to one traveling south on Marsh Road in respect of cars approaching from the west on Route 31; that the stop sign had a very low target value; that the various signs leading up to the stop sign presented a cluttered and confusing foreground; that the intersection sign on Marsh Road failed to differentiate between a major and minor highway; that the State should have been cognizant of conditions at the intersection and of its own regulations applicable thereto and that the State was not vigilant in conducting appropriate studies as to vehicular volume, accident hazards, and speed and stop requirements. All of these factors taken cumulatively indicate carelessness in maintaining the proper type of traffic control devices at this intersection and this carelessness constituted one of the efficient and proximate concurring causes of the accident. The failure of the State to warn where there is a duty to warn is negligence (*Nuss* v. *State of New York*, 301 N. Y. 768; *Eastman* v. *State of New York*, 303 N. Y. 691). *Hicks* v. *State of New York* (4 N Y 2d 1) is distinguishable because there was no sight distance problem and no evidence of any violation of State Traffic Commission Regulations. The only issue there was whether the State had been negligent in removing a stop sign and the Court of Appeals determined that, where there is no sight distance problem for an approaching motorist, no stop sign is necessary.

The State had notice of at least 10 prior accidents occurring at this intersection between 1951 and 1955, at least three of which were of such a similar nature as to classify the intersection as dangerous for southbound traffic on Marsh Road. There is testimony by the State that prior accident history is important in determining the type of traffic control. The prior accident history of the intersection should have prompted additional investigation as to the nature of the causes of the accidents so that any necessary corrective action could have been taken. It was error for the trial court to have refused to admit into evidence records of all prior accidents within a four-year period. Reports of prior accidents are admissible as evidence only of a dangerous situation (*Quinlan* v. *City of Utica*, 11 Hun 217, affd. 74 N. Y. 603; *Van de Walker* v. *State of New York*, 278 N. Y. 454) and to show that an intersection tested by use may be demonstrably dangerous (Richardson, Evidence [8th ed.], § 201, p. 173; 1 Jones, Evidence [5th ed.], § 185, p. 324; 2 Wigmore, Evidence [3d ed.], §§ 252, 437; *Cahill* v. *New York, N. H. & H., R. Co.*, 351 U. S. 183, 190; *District of Columbia* v. *Armes*, 107 U. S. 519; *Eastman* v. *State of New York, supra*; *Annino* v. *City of Utica*, 276 N. Y. 192; *Gastel* v. *City of New York*, 194 N. Y. 15; *Gillrie* v. *City of Lockport*, 122 N. Y. 403; *Hynes* v. *Railway Express Agency*, 267 App. Div. 835). Reports of prior accidents are not admissible as evidence of negligence on the part of the State but only as evidence that the use of this intersection by motorists was fraught with danger and required careful scrutiny for possible protective measures which would inherently safeguard motorists and prevent additional accidents. Foreseeability of future danger inherent in frequency of past accidents cannot be ignored with impunity, if traffic control is to have any reasonable conformity to reality. The whole purpose of control is nullified if the nature of the control is not realistically attuned to the physical characteristics of the conditions sought to be influenced. Casualness in obviating what is perceptibly dangerous breeds additional opportunity for that which concerted effort could and should preclude. Laxity in prevention is not consonant with proper discharge of an obligation of forestalling the happening of the predictable.

The State should not be permitted to escape its share of responsibility for this accident and should, therefore, respond in damages to these claimants.

All concur, except Bastow and Goldman, JJ., who dissent and vote for reversal and for a new trial in an opinion by Goldman, J., in which Bastow, J., concurs. Present — Bastow, J. P., Goldman, Halpern, McClusky and Henry, JJ.

Judgments affirmed, without costs of these appeals to any party.