■ BARBARA COLE, as Administratrix of the Estate of SIDNEY COLE, Deceased, Respondent, v. NEW YORK RACING ASSOCIATION, Appellant, et al., Defendants.— In an action to recover damages for wrongful death, defendant New York Racing Association appeals from a judgment of the Supreme Court, Queens County, entered January 19, 1965 upon a verdict in plaintiff's favor against it. As against the remaining defendants, the action was discontinued. Judgment affirmed, with costs. The action arose out of a fatal accident on July 11, 1961 at Aqueduct Race Track, which is owned and operated by appellant. During the course of an "exhibition" workout between races, plaintiff's intestate, Sidney Cole, a well-known professional jockey, was thrown from his mount after it had twice in rapid succession collided with the infield track rail. This railing, installed in 1959 when the track was completely rebuilt, was constructed of aluminum and supported at 10-foot intervals by metal posts, slightly more than 3 feet in height. The posts angled away from the railing down to the rim of the infield, where they were imbedded in cylindrical concrete footings about 8 inches in diameter, encased in metal. These concrete footings rose from 3 to 5 inches above the level of the ground. In falling, Cole hit the railing with the front of his body and immediately tumbled over it, striking his back and head upon one of these raised concrete bases. He died shortly thereafter. At the trial plaintiff proceeded on the theory that defendant was negligent in erecting and maintaining these concrete footings exposed and elevated above the ground, and that this negligence, although not the cause of decedent's fall, was the proximate cause of his death. It was established through the composite testimony of several knowledgeable witnesses that footings elevated in this manner were nonexistent at any other track in the country. Defendant's own witness, the architect who had designed the 1959 installation of this track and who had previously participated in the design and construction of several other major tracks throughout the country, testified that the plan he had originally submitted called for these

footings to be level with the ground as a safety precaution. The change in design to raise the footings was made, after consultation with track representatives, in order to retard corrosion of the metal posts and thus effect an economy. Certainly, it was within the jury's competence to infer from this testimony, which was not substantially controverted, that construction of these footings level with or beneath the ground was a general custom observed in the building of race track courses and was intended to decrease the potential of serious harm in the event of falls such as decedent's, that the occasion of such falls was reasonably foreseeable, and that the defendant's deviation from the general custom for reasons of economy was negligence (*Shannahan* v. *Empire Eng. Corp.*, 204 N. Y. 543). *Garthe* v. *Ruppert* (264 N. Y. 290) is not to the contrary; it holds merely that evidence of one or two instances is not sufficient as a gauge of general custom. Evidence was also adduced that, during the two-year period that the new track was in operation and prior to the fatal accident here involved, 21 jockeys and exercise boys were thrown from horses at appellant's track. While none of them sustained injury by coming into contact with the raised concrete footings, these spills were notice to defendant that raised footings increased the peril. Having in mind that the negligence alleged was related to the consequences of such a fall, we cannot say that evidence demonstrating the foreseeability of such falls had no probative value. "The risk reasonably to be perceived defines the duty to be obeyed" (*Palsgraf* v. *Long Is. R. R. Co.*, 248 N. Y. 339, 344). In any event, appellant does not on this appeal question the competency or relevance of the prior accidents, but limits its contention of evidentiary error to the admission of proof of the death of another jockey, Gilbert, when thrown during a race at appellant's track some three months before the accident in issue. Direct testimony was adduced by plaintiff that Gilbert had struck his head upon one of these footings and had died of a fractured skull. We cannot agree that the circumstances of the falls were so different or the period between them so long as to make the prior accident too remote and, therefore, evidence of it incompetent on the issue for which it was offered (*Quinlan* v. *City of Utica*, 11 Hun 217, affd. 74 N. Y. 603). Since appellant, neither here nor in the court below, objected to the evidence of the cause of Gilbert's death on the ground that it was hearsay, but argued only that it was too remote, we do not reach the hearsay question. Appellant's claim that decedent's assumption of the risks inherent in racing embraced the danger occasioned by the elevated condition of the footings was not supported by any evidence tending to show that the danger was "ordinary and necessary" to the sport and thus inherent in the activity itself (*Murphy* v. *Steeplechase Amusement Co.*, 250 N. Y. 479), or that decedent was or should have been conscious of the *danger* of the defect (*Larson* v. *Nassau Elec. R. R. Co.*, 223 N. Y. 14; *Maltz* v. *Board of Educ.*, 32 Misc 2d 492, affd. 282 App. Div. 888). There was competent expert testimony that the simultaneous contact of decedent's back with the lower supporting post and the raised footing was the competent producing cause of the injury which caused death, and that the force of the blow required to produce the death-causing injury was less than what would have been required had the footing been covered. A plaintiff need not exclude every cause of injury other than defendant's negligence (*Dunham* v. *Village of Canisteo*, 303 N. Y. 498). It is sufficient if he shows facts and circumstances "from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred" (*Ingersoll* v. *Liberty Bank of Buffalo*, 278 N. Y. 1, 7). Especially is this true in a wrongful death action where "a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence" (*Noseworthy* v. *City of New York*, 298 N. Y. 76,

80). Christ, Acting P. J., Rabin and Benjamin, JJ., concur; Hopkins, J., dissents and votes to reverse the judgment and to order a new trial, with the following memorandum in which Hill, J., concurs: The decedent was a jockey assigned to ride a two-year old filly in a workout at Aqueduct racetrack on July 11, 1961. An aluminum safety rail was located along the edge of the infield of the track at a height of approximately 4 feet. The safety rail was 5 inches in width, and supported at intervals of 10 feet by steel support rails set in concrete bases in the ground. The support rails slanted back from the vertical so that there was a distance of 2 feet between the concrete bases and the safety rail. The bases were concrete cylinders 8 inches in diameter encased in metal around the sides. During the workout, the filly ran toward the rail and bumped into it. The horse at once veered out and then hit the rail a second time, throwing the jockey. He struck the safety rail, spun around it, and was then propelled downward head first upon a concrete base and the ground, causing injuries resulting in his death. The theory of liability against the defendant was that it negligently designed, constructed and maintained the concrete bases above ground level. To succeed on a theory of improper design plaintiff was obliged to establish that the defendant did not follow the common, accepted, and customary standard used in similar structures or businesses (*Garthe* v. *Ruppert,* 264 N. Y. 290). The plaintiff called as an expert an engineer who had no experience in the design or construction of race tracks. He was of the opinion that the concrete bases should have been padded, analogizing the situation to the padding on goal posts at football games and the padding of walls near the basket on a basketball court. He could not point out any racetrack that padded its rails. The evidence given by two other witnesses for the plaintiff was that no other tracks had concrete bases above the ground. These witnesses, however, stated that there was nothing wrong with the railing structure. The architect who designed the track stated that he originally designed the railing so that the concrete bases would be level with the ground. He further stated that, after a conference with an official of the Jockey Club, he revised his design to raise the top of the concrete bases from ground level to three to five inches above the ground because he was told that the steel support rail was subject to corrosion at ground level. The jury, based on the architect's testimony, could infer that a factor of safety was surrendered for reasons of economy. However, in addition to improper design, plaintiff attempted to prove negligence on the theory that the rail structure had been found to be dangerous in actual use (cf. *De Salvo* v. *Stanley-Mark-Strand Corp.,* 281 N. Y. 333, 338; *Loftus* v. *Union Ferry Co.,* 84 N. Y. 455). Evidence of claimed prior similar accidents was offered by the plaintiff to show that a dangerous condition existed, and that the defendant had knowledge of it (cf. *Annino* v. *City of Utica,* 276 N. Y. 192, 196; *Gastel* v. *City of New York,* 194 N. Y. 15). Nevertheless, before such proof can be admitted, it must be shown that the circumstances in the prior accident were similar to the one in suit (*Jasinski* v. *New York Cent. R. R.,* 21 A D 2d 456, 460). The plaintiff adduced proof that since 1959 21 jockeys and exercise boys had fallen off their horses at Aqueduct. None of these occurrences had any relationship to the safety rail and were of no probative value. Plaintiff also submitted evidence that on April 4, 1961, a little more than three months prior to the accident in suit, another jockey had been thrown off his horse during a race. Plaintiff's witness stated that the jockey had been either thrown toward the concrete bases, or rolled there, and that the jockey's head had struck a concrete base. This witness also stated that the jockey had died of a skull fracture. The defendant objected to the entire line of questioning. We find this proof of a prior accident to be insufficient for the reason that there was no competent

medical proof that that jockey died because of the existence of the concrete base. The bald hearsay statement of a lay witness that he died of a skull fracture is, in our opinion, no proof at all. Without such testimony, it cannot be said that the prior accident was of such a similar nature to the one at suit that the defendant is chargeable with knowledge of a dangerous condition, and was negligent for failing to correct it. Since we cannot determine whether the jury's finding of negligence in design was based on the testimony of the architect or on the evidence of prior accidents, we must reverse the judgment and order a new trial (*Dore* v. *Long Is. R. R. Co.*, 23 A D 2d 502; *Thomas* v. *Central Greyhound Lines*, 6 A D 2d 649). We are also of the opinion the medical testimony did not causally relate the death of the jockey to the negligence of the defendant. The plaintiff called a pathologist who had not examined the body, but who testified with respect to his interpretation of the autopsy report. The pathologist was asked if death was caused by the jockey's back coming into contact with the lower support rail and the concrete base to which he answered affirmatively. There was, however, no proof whatever to support any claim of negligence relating to the steel support rails. Since the plaintiff bottomed the claim of negligence on the raised concrete base, it was necessary that clear proof that this was the cause of death should have been adduced. We are not unmindful of the rule in this State that a medical expert need not rule out every possible cause of injury other than the negligence complained of (*Dunham* v. *Village of Canisteo*, 303 N. Y. 498). But here the plaintiff failed to establish that the raised concrete base was a competent producing cause of death. In a case as close as this one, that ingredient of proof cannot be passed over as immaterial. This is particularly so since the defendant is not charged with any negligence in the actual fall of the jockey from the horse. Further, the evidence demonstrates that the jockey would have struck the concrete base even if it had been at ground level and not in a raised position. We are, therefore, of the opinion that the judgment should be reversed and a new trial granted.