Katleski v Cazenovia Golf Club, Inc. (2025 NY Slip Op 02178)

Katleski v Cazenovia Golf Club, Inc.

2025 NY Slip Op 02178

Decided on April 15, 2025

Court of Appeals

Cannataro

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 15, 2025

No. 33 

[*1]David Katleski, Appellant,
v
Cazenovia Golf Club, Inc., Respondent, et al., Defendants.
No. 62 SSM 4
Mary E. Galante, Appellant,
 v.
v
Robert G. Karlis, et al., Defendants, County of Erie, Respondent.

Case No. 33:
Kara M. Rosen, for appellant.
W. Bradley Hunt, for respondent.
National Golf Course Owners Association, amicus curiae.
Case No. 62 SSM 4:
Submitted by Benjamin J. Andrews, for appellant.
Submitted by Erin E. Molisani, for respondent. 

CANNATARO, J.

This Court recently reaffirmed that the primary assumption of risk doctrine must be carefully circumscribed so as not to undermine the legislative comparative fault regime applicable to personal injury actions (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 95 [2023]; see CPLR 1411). In these appeals, we clarify the scope of two important limitations on the doctrine: its inapplicability to unreasonably enhanced risks and its confinement to cases involving participation in athletics and recreation.
On the same day in June 2020, plaintiffs were injured in separate and very different accidents related to the sport of golf. Plaintiff David Katleski was struck by an errant golf ball while competing in a golf tournament. Plaintiff Mary E. Galante was struck by a car in the parking lot of a golf course before she began to play the course. For the reasons that follow, the primary assumption of risk doctrine precludes Katleski's negligence claim because the risk of being struck by a mishit ball while golfing is inherent in the game and there is no evidence that the design of the course unreasonably enhanced that risk. Galante's claim must be reinstated, however, because the primary assumption of risk doctrine has no application to a person who was not participating in a protected athletic or recreative activity at the time of their injury.
I.
Katleski v Cazenovia Golf Club, Inc.
David Katleski, an experienced golfer, was struck by a golf ball while competing in a tournament at a golf course owned and operated by defendant Cazenovia Golf Club, Inc. The rules of the tournament provided for a "shotgun start," meaning that different groups of players were scheduled to tee off simultaneously from different holes, with the winner to be determined after each group completed three rounds of the nine-hole course. The accident occurred during the third round, as Katleski was riding in a golf cart on the seventh fairway looking for a ball. At the same time, another player was teeing off from the third hole, which runs roughly parallel to the seventh but is played in the opposite direction. Although the other player intended to hit his ball straight down the fairway of the third hole, the ball hooked hard to the left and traveled to the adjacent seventh fairway where it struck Katleski in his left eye.
Katleski commenced a negligence action seeking compensation for his injuries, pleading in relevant part that the golf course was negligently designed and operated. During discovery, it was revealed that the layout of the course has remained substantially the same since it was first constructed in 1924. The tee box that was used to make the shot that injured Katleski (tee box "A") was installed approximately a decade prior to the accident to increase the difficulty of the third hole and was predominantly used in tournaments. At his deposition, Katleski testified that he had been a member of defendant's club for 18 years and had played the course approximately 100 times prior to the accident, including twice on the day he was struck. Katleski acknowledged that getting hit by a golf ball is an inherent risk of playing golf, and even claimed that on the day of the accident, he remarked to other players that the placement of tee box A was dangerous due to the lack of a clear line of sight between that box and the seventh hole.
The club moved for summary judgment, arguing that Katleski voluntarily assumed the risk of being hit by a golf ball when he elected to participate in the tournament. Supreme Court denied the motion, concluding that Katleski's opposition, which included an expert affidavit on the dangers of the course layout, raised a triable issue of fact as to whether that risk was unreasonably enhanced, thereby precluding application of the assumption of risk doctrine. The club appealed and the Appellate Division reversed, granting the club's motion in a split decision (225 AD3d 1030 [3d Dept 2024]). The court emphasized Katleski's experience as a golfer and awareness of the course topography and layout, which it concluded were "as safe as they appeared to be" (id. at 1038 [internal quotation marks and brackets omitted]). The court further concluded that despite conflicting expert opinion on certain issues, there was no evidence that the course design "exposed plaintiff . . . to a risk over and above the usual dangers that are inherent in the sport of golf" (id. [internal quotation marks omitted]). Katleski appealed to this Court as of right based on the two-justice dissent (see CPLR 5601 [a]), and we now affirm.
Galante v Karlis
On the same day, 160 miles away, Mary Galante was injured shortly after arriving at the Elma Meadows Golf Course in Erie County to play with a group of friends. After parking her car at the facility, Galante walked from the parking lot to the clubhouse, checked out a golf cart at the front desk, and drove the cart back to the parking lot with [*2]the intention of retrieving her golf clubs from her car. Unfortunately, as she drove her cart into the parking lot, Galante collided with a car that was exiting, causing her to be ejected onto the pavement.
Galante appeals as of right from an order of the Appellate Division that, over a two-justice dissent, denied her motion to strike the County's primary assumption of risk defense and granted the County's cross-motion for summary judgment dismissing the complaint based on that defense (229 AD3d 1311 [4th Dept 2024]). The court rejected Galante's assertion that assumption of risk did not apply to her simply driving a golf cart in the parking lot, reasoning that although Galante was not actively engaged in golf at the time of the accident, "the accident occurred in a designated recreational venue" (id. at 1312-1313 [internal quotation marks and ellipsis omitted]). The court further concluded that "the risk of being injured while driving a golf cart is inherent in the sport of golf and that plaintiff was aware of that risk and assumed it" (id. at 1313-1314 [internal quotation marks omitted]). We now reverse.
II.
With the enactment of New York's comparative fault statute in 1975 (see CPLR 1411), the legislature abolished contributory negligence and assumption of risk as absolute defenses in negligence cases (see Trupia v Lake George Cent. School Dist., 14 NY3d 392, 394 [2010]). This Court nonetheless has continued to apply a "limited vestige" of the doctrine, known as primary assumption of the risk, in the narrow context of athletic and recreative activities (Custodi v Town of Amherst, 20 NY3d 83, 87 [2012]). Despite our acknowledgment that the doctrine "may not 'sit comfortably' within the landscape of comparative fault," we have justified its retention as necessary to promote free and vigorous participation in sports and recreative activities, which " 'possess enormous social value, even while they involve significantly heightened risks' " (Grady, 40 NY3d at 93-94, quoting Trupia, 14 NY3d at 395; Turcotte v Fell, 68 NY2d 432, 439 [1986]). The doctrine preserves and fosters these activities by shielding coparticipants, activity sponsors, and venue owners from the potentially crushing liability that would arise absent its protection (see Grady, 40 NY3d at 94-95; Custodi, 20 NY3d at 87).
Under the primary assumption of risk doctrine, "[a] person who chooses to participate in a sport or recreative activity consents to certain risks that are inherent in and arise out of the nature of the sport generally and flow from such participation" (Anand v Kapoor, 15 NY3d 946, 947-948 [2010] [internal quotation marks omitted]; see Morgan v State of New York, 90 NY2d 471, 484 [1997] [observing that "knowledge plays a role but inherency is the sine qua non" of the doctrine]). "[I]t is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which [their] injury occurred, so long as [they are] aware of the potential for injury of the mechanism from which the injury results" (Grady, 40 NY3d at 95 [internal quotation marks omitted]). It is well settled, however, that "participants are not deemed to have assumed risks resulting from the reckless or intentional conduct of others, or risks that are concealed or unreasonably enhanced" (Custodi, 20 NY3d at 88; Anand, 15 NY3d at 948; Morgan, 90 NY2d at 485; Benitez v New York City Bd. of Educ., 73 NY2d 650, 658 [1989]).
In Katleski, plaintiff was struck by a mishit golf ball, which no one disputes is a risk that naturally inheres in the sport of golf (see Rinaldo v McGovern, 78 NY2d 729, 733 [1991]; accord Anand, 15 NY3d at 948). The sole question presented by Katleski's appeal is whether he raised a triable question of fact that the placement of tee box A on the third hole unreasonably enhanced that risk.
The rule that sports players do not assume risks that have been unreasonably enhanced is well settled in our case law and serves as an "important counterweight to an undue interposition of the assumption of risk doctrine" (see Morgan, 90 NY2d at 485). Most recently, in Grady, we determined that a factual question existed as to whether a fast-moving, intricate baseball drill unreasonably enhanced the risks of that sport. The drill required balls from two parts of the infield to be thrown in the direction of two players near first base at the same time. The plaintiff, a high school varsity baseball player, was injured when an errant ball bypassed a small protective screen erected between him and the other first baseman and struck him in the face. We reasoned that although "[e]rrant balls may be an inherent risk of playing baseball, . . . a jury should be permitted to determine whether plaintiff's injury was the result of such an inherent risk, or whether 'the risks [were] concealed or unreasonably enhanced' by the complexity of the drill performed with use of a small protective screen" (40 NY3d at 99-100, quoting Custodi, 20 NY3d at 88).[FN1]
The risks of a sport can also be unreasonably enhanced through the negligent design or operation of a sports venue. In Cole v New York Racing Assn. (24 AD2d 993 [2d Dept 1965], affd 17 NY2d 761 [1966]), the jury returned a verdict in favor of the plaintiff in a wrongful death action arising from a fatal accident at a horseracing track. The decedent, a well-known professional jockey, was killed upon being thrown from his horse and striking his head against one of the concrete footings of the infield track railing. The plaintiff argued at trial that the racetrack owner was negligent in designing and maintaining above-ground footings (id. at 993; see also id. at 995 [Hopkins, J., dissenting]). The Appellate Division held that the verdict was justified by evidence that "the elevated condition used for the footings was higher than the level of construction commonly used at other racetracks, that it was not necessary and that it had been used by defendant as an economy measure" (Turcotte, 68 NY2d at 443 [describing Cole]; see also Owen v R.J.S. Safety Equip., 79 NY2d 967, 969-970 [1992] [questions of fact existed as to whether the design of the retaining wall and guardrail of the defendants' racecar track "engendered additional risks that do not inhere in the sport" (internal quotation marks omitted)]).
In contrast, venue design did not unreasonably enhance the risk in Bukowski v Clarkson University (19 NY3d 353 [2012]), involving a college baseball pitcher who was injured by a returned fastball while practicing at an indoor baseball facility. The plaintiff's theory at trial was that the inherent risk of being hit by a batted ball was unreasonably enhanced by certain features of the facility's design, including its lighting, pitching backdrop, and the absence of a protective screen. We rejected those contentions and affirmed the lower courts' award of a directed verdict in favor of the venue owner, explaining that the assumption of risk doctrine "encompasses risks involving less than optimal conditions" (id. at 356). Because the record showed that similar conditions were "common" at indoor baseball facilities, and staff had not "violated any established safety protocol or . . . rulebook," we held that "the conditions in the indoor facility did not create 'a dangerous condition over and above the usual dangers that are inherent in the sport' " (see id. at 357, quoting Morgan, 90 NY2d at 485).
The record of this case is more like Bukowski than it is like Grady or Cole. In opposition to the club's prima facie showing on its motion for summary judgment, Katleski relied principally on expert opinion that the placement of tee box A on the third hole increased the risk to players on the seventh fairway "drastically" beyond what they faced prior to the box's installation or might have faced had a barrier or other protective measure been implemented. In addition to being wholly conclusory, that contention misapprehends the relevant baseline from which unreasonable enhancement is measured. It is not enough for Katleski to show that the layout of the course was less safe than it ideally could have been; he must show that the design enhanced the inherent risk of being struck by a ball beyond what is customary in the sport (compare Bukowski, 19 NY3d at 357, with Cole, 24 AD2d at 994-995; see also Turcotte, 68 NY2d at 443 [distinguishing Cole]). In that regard, Katleski failed to rebut the club's showing that golf courses commonly lack clear visibility and barriers between holes. The club's expert cited numerous facilities in New York and across the world that contain holes in close proximity—including some that share greens and fairways, and one location that even features crossing shot lines—but have no barriers between holes. There is no basis in the record to infer that the risks of the subject course exceeded the risks presented by those comparable facilities, and thus no basis to conclude that its design gave rise to an "enhanced" risk.
Katleski also failed to raise a question of fact as to whether the inherent risks of golf were unreasonably enhanced by the course design. On this point, the club presented unrebutted evidence that the placement of tee box A served a competitive purpose—namely, increasing the difficulty of the third hole "to conform with more modern golf." The principle that a such a purpose helps to establish that a risk has not been unreasonably enhanced is reflected in our case law on the assumption doctrine. In Turcotte, we stated that "participants do not consent to acts that are reckless or intentional," and that an infraction is reckless if, among other things, it is "done without any competitive purpose" (68 NY2d at 339, 441). We also considered the competitive purpose underlying the defendant's actions in Beck v Scimeca, decided in Morgan (90 NY2d 471, supra), where a karate student was injured attempting to tumble over a barrier. We explained that "[t]he fact that the barrier was set at a higher level . . . does not raise any issue of fact. The primary means of improving one's sporting prowess and the inherent motivation behind participation in sports is to improve one's skills by undertaking and overcoming new challenges and obstacles" (id. at [*3]487). Put differently, although the placement of the barrier increased the risk of injury to some degree, tolerance of that increased risk supported the underlying purpose of the assumption doctrine to promote the enjoyment of the athletic activity. Here, the placement of tee box A served a similar purpose.
Given these considerations, the Appellate Division correctly concluded that the experts' dispute over the existence and applicability of industry standards governing the layout of holes and erection of barriers did not preclude judgment as a matter of law in the club's favor (see 225 AD3d at 1036). Although evidence that the defendant violated an established safety protocol or industry code concerning facility design might in some circumstances support an inference that the defendant unreasonably enhanced the risks of a sport (see Bukowski, 19 NY3d at 357), here, Katleski did not present evidence that the placement of the tee box was governed by any such rules.
In sum, the Appellate Division correctly determined that there was no question of fact as to whether the club unreasonably enhanced the risk of players being struck by golf balls, and that Katleski therefore must be deemed to have assumed that risk as a matter of law.
III.
In Galante, we reach a different conclusion because Galante was not playing, observing, or otherwise participating in an athletic or recreative activity at the time she was injured. Although the primary assumption of risk doctrine "remains in full force in the limited context of athletic and recreative activities" following the enactment of CPLR 1411 (see Grady, 40 NY3d at 94), "[w]e have not applied the doctrine outside of this limited context and it is clear that its application must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation" (Trupia, 14 NY3d at 395). To that end, we have instructed that primary assumption of risk applies only to "personal injury claims arising from sporting events, sponsored athletic and recreative activities, or athletic and recreational pursuits that take place at designated venues" (Custodi, 20 NY3d at 89). "[P]ersons injured while traversing streets and sidewalks" generally are not subject to the doctrine because this "would create an unwarranted diminution of the general duty of landowners—both public and private—to maintain their premises in a reasonably safe condition," potentially "swallow[ing] the general rule of comparative fault" (id.).
Galante was merely driving a golf cart in a parking lot at the time of her injury. Under these circumstances, the fact that the accident occurred adjacent to a designed venue for golf does not alter the analysis (see e.g., Weishsel v State of N.Y., 231 AD3d 1459, 1461-1462 [3d Dept 2024]; Hawkes v Catatonk Golf Club, 288 AD2d 528, 529 [3d Dept 2001]).[FN2]
* * *
Accordingly, in Katleski, the order of the Appellate Division should be affirmed, with costs. In Galante, the order of the Appellate Division should be reversed, with costs, plaintiff's motion insofar as sought to dismiss the 11th affirmative defense on behalf of the County granted, and the case remitted to the Appellate Division for consideration of the issues raised but not determined on appeal to that Court.
For No. 33:
Order affirmed, with costs. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.
For No. 62 SSM 4:
On review of submissions pursuant to section 500.11 of the Rules, order reversed, with costs, plaintiff's motion insofar as sought to dismiss the 11th affirmative defense on behalf of the County granted, and case remitted to the Appellate Division, Fourth Department, for consideration of issues raised but not determined on appeal to that Court. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.
Decided April 15, 2025

Footnotes

Footnote 1: By contrast, in Secky v New Paltz Central School District, decided with Grady, this Court affirmed the dismissal of a negligence claim brought by an amateur basketball player who was injured while participating in a drill in which players competed to retrieve a rebound without regard to boundary lines or minor fouls (40 NY3d at 97-98). While pursuing a loose ball, the plaintiff collided with another player and fell into a set of bleachers, injuring his shoulder (id. at 97). Although the rules of the drill presumably increased the risk of injury to some degree, this Court held that the drill "did not unreasonably increase the risk of injury beyond that inherent in the sport of basketball, and [thus] the Appellate Division properly granted [the] defendants' motion for summary judgment" (id. at 98).

Footnote 2: Because we hold that Galante was not participating in any athletic activity at the time of her injury, we do not address the Appellate Division's alternative conclusion that she was injured by a risk inherent in golf.