Annitto v Smithtown Cent. Sch. Dist. (2022 NY Slip Op 06098)

Annitto v Smithtown Cent. Sch. Dist.

2022 NY Slip Op 06098

Decided on November 2, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
REINALDO E. RIVERA
JOSEPH A. ZAYAS
DEBORAH A. DOWLING, JJ.

2020-04159
2020-08440
 (Index No. 611093/17)

[*1]Vita Annitto, etc., appellant, 
v
Smithtown Central School District, respondent, et al., defendant.

Sacks and Sacks, LLP, New York, NY (Scott N. Singer of counsel), for appellant.
Ahmuty, Demers & McManus, Albertson, NY (Glenn A. Kaminska and Kevin J. Murtagh of counsel), for respondent.

DECISION & ORDER
In an action to recover damages for personal injuries, the plaintiff appeals from (1) an order of the Supreme Court, Suffolk County (Joseph A. Santorelli, J.), dated May 7, 2020, and (2) a judgment of the same court entered September 25, 2020. The order granted the motion of the defendant Smithtown Central School District for summary judgment dismissing the complaint insofar as asserted against it. The judgment, upon the order, is in favor of the defendant Smithtown Central School District and against the plaintiff dismissing the complaint insofar as asserted against that defendant.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is reversed, on the law, the motion of the defendant Smithtown Central School District for summary judgment dismissing the complaint insofar as asserted against it is denied, the complaint is reinstated insofar as asserted against that defendant, and the order is modified accordingly; and it is further,
ORDERED that one bill of costs is awarded to the plaintiff.
The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]; Matter of Aho, 39 NY2d at 248).
In June 2015, the infant plaintiff, then a varsity football player nearing the end of his sophomore year at the defendant Smithtown High School East, was injured while performing a squat lift in the weight room of the high school, which is within the defendant Smithtown Central School District (hereinafter the School District), during an off-season weight training test overseen by the high school's football coach. The coach testified at his deposition that he had advised the players that it was necessary to have a spotter whenever they were lifting weights. The coach testified that, when a squat lift was being performed, the role of the spotter was to stand next to the lifter, with a hand in front of the lifter and a hand behind the lifter, and to ensure that the lifter did not fall forward [*2]or backward. At the time of the accident, the spotter assigned to the infant plaintiff was another student, a graduating senior who was also a member of the football team. The infant plaintiff testified at an examination pursuant to General Municipal Law § 50-h that, while lifting a bar weighing 295 pounds for a "weight test," on his third repetition he could no longer hold the weight and lost control of the bar. The weight bar fell backward and landed on a support rack, causing one of his fingers to be crushed between the bar and the support rack.
The infant plaintiff's mother commenced this action on his behalf against the School District, among others, to recover damages for personal injuries suffered by the infant plaintiff, alleging, among other things, that the School District was negligent in supervising the infant plaintiff at the time of the accident. After discovery, the School District moved for summary judgment dismissing the complaint insofar as asserted against it on the ground, inter alia, that the action was barred by the doctrine of primary assumption of risk. The Supreme Court granted the School District's motion, and entered a judgment dismissing the complaint insofar as asserted against the School District. The plaintiff appeals.
Under the doctrine of primary assumption of risk, a person who voluntarily participates in a sport or recreational activity is deemed to consent to the risks inherent in that sport, thereby negating any duty on a defendant's part to safeguard the plaintiff from those risks (see Custodi v Town of Amherst, 20 NY3d 83, 87; Trupia v Lake George Cent. School Dist., 14 NY3d 392, 395; Morgan v State of New York, 90 NY2d 471, 484; Turcotte v Fell, 68 NY2d 432, 438-439). While the absolute defense of implied assumption of risk, which was abolished by the enactment of CPLR 1411 in 1975, barred recovery by a plaintiff who was aware of the risks of engaging in a specific act and engaged in that specific act nonetheless (see Arbegast v Board of Educ. of S. New Berlin Cent. School, 65 NY2d 161, 165), the separate and distinct doctrine of primary assumption of risk posits that the risk is assumed by virtue of the plaintiff's voluntary participation in a sporting event, which indicates the plaintiff's consent to the risks that are inherent in that sport. Although a plaintiff's knowledge of the risk involved in the particular act that results in injury remains relevant, under CPLR 1411, in assessing his or her comparative fault, in the context of primary assumption of risk, "knowledge plays a role but inherency is the sine qua non" (Morgan v State of New York, 90 NY2d at 484).
Further, since the plaintiff is deemed to have consented to the risks inherent in the sport, the defendant is relieved of any duty to protect the plaintiff from those risks (see Turcotte v Fell, 68 NY2d at 439; Morgan v State of New York, 90 NY2d at 485; Cotty v Town of Southampton, 64 AD3d 251, 254). The purpose served by eliminating the duty to protect a plaintiff from such inherent risks is to advance "a social policy to 'facilitate free and vigorous participation in athletic activities'" (Morgan v State of New York, 90 NY2d at 484, quoting Benitez v New York City Bd. of Educ., 73 NY2d 650, 657), which have "enormous social value" (Trupia v Lake George Cent. School Dist., 14 NY3d at 395). The Court of Appeals has admonished that the doctrine of primary assumption of risk "must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation" (id.).
Here, the infant plaintiff was a participant in the sport of football. Contrary to the School District's suggestion, the infant plaintiff—unlike the plaintiff in Lee v Maloney (270 AD2d 689, 689), a "nationally ranked weight lifter" who was injured during a weightlifting competition—was not participating in the sport of weightlifting. Thus, while the School District was absolved of any duty to protect the infant plaintiff from the risks he assumed, the only risks he assumed were those that are inherent in the sport of football (see Morgan v State of New York, 90 NY2d at 488-489; M.P. v Mineola Union Free Sch. Dist., 166 AD3d 953, 954-955; Duffy v Long Beach City Sch. Dist., 134 AD3d 761, 763-764; Braile v Patchogue Medford Sch. Dist. of Town of Brookhaven, Suffolk County, N.Y., 123 AD3d 960, 962; Weinberger v Solomon Schechter Sch. of Westchester, 102 AD3d 675, 679).
Unlike a plaintiff subject to the pre-1975 defense of implied assumption of risk, the infant plaintiff in this case did not assume a risk at the moment he attempted to lift the 295-pound bar. Rather, his assumption of risk occurred when he joined the football team (see Turcotte v Fell, [*3]68 NY2d at 438), and the risks he assumed were limited to those that are inherent in the sport of football. The risk of losing control of a 295-pound bar is not a risk inherent in the sport of football.
Although the doctrine of primary assumption of risk is applicable to a player who is injured while participating in a practice session, the doctrine applies only when the injury-producing risk is inherent in the sport the player is practicing. For example, in Bukowski v Clarkson Univ. (19 NY3d 353), the plaintiff, a college baseball player, was injured while pitching during an indoor practice session, when the batter hit a line drive that struck the plaintiff in the jaw. Since the plaintiff was pitching from a mound that was regulation distance from home plate, and the risk that a pitcher will be struck by a batted ball is inherent in the sport of baseball, the Court of Appeals held that the plaintiff's action was barred by the doctrine of primary assumption of risk. By contrast, in Braile v Patchogue Medford Sch. Dist. of Town of Brookhaven, Suffolk County, N.Y. (123 AD3d 960), the infant plaintiff, a member of her middle school's soccer team, was injured during a soccer practice that was held indoors because it was raining that day. The soccer coach directed the players to run sprints against each other in a school hallway, and, upon finishing one such race, the infant plaintiff was unable to stop before her face struck a wall that was 9 to 10 feet beyond the finish line. This Court reversed an order granting the defendant school district's motion for summary judgment, holding that the doctrine of primary assumption of risk was not applicable. The Court explained that the defendant "failed to establish, prima facie, that by voluntarily participating as a member of her school soccer team, the infant consented to the risks of racing in the school hallway. In other words, the defendant did not establish that the commonly appreciated risks which are inherent in and arise out of the nature of soccer generally and flow from such participation on the soccer team included the risks of running into a wall while racing in the school hallway" (id. at 962).
Like the risk of running into a wall while training for soccer, the risk that the football coach in this case would allegedly fail to provide adequate supervision during the weight test, causing the infant plaintiff's finger to be crushed by the 295-pound bar, was not a risk the infant plaintiff assumed when he chose to join the football team. The accident did not even occur, as in Braile, during an in-season practice, but during an off-season weight test. While the weight test was related to the infant plaintiff's conditioning, and was occasioned by his membership on the school's football team, that does not mean that the risk of being injured while lifting a heavy bar is inherent in the sport of football. We cannot conclude that the fact that a person is getting in shape to play a sport means that the person assumes all of the risks associated with getting in shape, such that a school district would have no duty to its students to provide safe conditions for lifting weights and proper supervision of that activity.
Even if we were to conclude that the doctrine of primary assumption of risk is applicable in this case, denial of the School District's motion would nonetheless be appropriate, as it failed to eliminate a triable issue of fact as to whether the risk of injury was unreasonably increased by inadequate spotting by the student assistant (see Owen v R.J.S. Safety Equip., 79 NY2d 967, 970; Andriienko v Compass Group USA, Inc., 174 AD3d 558, 559-560; Philippou v Baldwin Union Free Sch. Dist., 105 AD3d 928, 930; Schmidt v Massapequa High School, 83 AD3d 1039). The football coach testified at his deposition that he did not see the accident happen, and the School District did not submit any statement or testimony from the student assistant who was assigned to act as the infant plaintiff's spotter. The infant plaintiff testified at his examination pursuant to General Municipal Law § 50-h that he was looking toward the ceiling and could not see what the spotter was or was not doing, but it did not seem to him that the spotter was "actually looking out for [him]," because it should have been apparent to the spotter that the infant plaintiff was "struggling" on his third repetition. Thus, the School District did not offer any evidence regarding the spotter's experience or how much attention, if any, he was devoting to his task.
Alternatively, the School District contends that it cannot be held liable for negligent supervision because the accident happened so quickly that no amount of supervision could have prevented it (see Lopez v Freeport Union Free School Dist., 288 AD2d 355, 356). As the party moving for summary judgment, the School District had the burden of making a prima facie showing that the accident happened that quickly, but, aside from the words "it happened quickly," uttered in passing by the infant plaintiff during his examination pursuant to General Municipal Law § 50-h, [*4]the School District did not present any evidence showing how much time passed between the moment the infant plaintiff began to struggle and the moment the bar came down on his finger. Since the School District did not eliminate triable issues of fact as to whether the spotter had sufficient time to render assistance but negligently failed to perceive the difficulty encountered by the infant plaintiff or react appropriately, or whether the coach negligently entrusted that task to that student, it was not entitled to summary judgment (see C.Q. v Farmingdale Union Free Sch. Dist., 183 AD3d 850; M.P. v Mineola Union Free Sch. Dist., 166 AD3d at 955; Duffy v Long Beach City Sch. Dist., 134 AD3d at 764; Luciano v Our Lady of Sorrows School, 79 AD3d 705).
The School District's remaining contention is without merit.
Accordingly, the Supreme Court should have denied the School District's motion for summary judgment dismissing the complaint insofar as asserted against it.
IANNACCI, J.P., RIVERA, ZAYAS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court