Weichsel v State of New York (2024 NY Slip Op 05384)

Weichsel v State of New York

2024 NY Slip Op 05384

Decided on October 31, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 31, 2024

CV-24-0002
[*1]Jeffrey Weichsel et al., Respondents,
v
State of New York et al., Appellants.

Calendar Date:September 3, 2024

Before:Garry, P.J., Pritzker, Lynch, Fisher and Powers, JJ.

Roemer Wallens Gold & Mineaux LLP, Albany (Matthew J. Kelly of counsel), for appellants.
Law Office of John L. Weichsel, Hackensack, New Jersey (Devon M. Radlin of Law Offices of Devon M. Radlin, New York City, of counsel), for respondents.

Garry, P.J.
Appeal from an order of the Court of Claims (Christopher J. McCarthy, J.), entered December 7, 2023, which denied defendants' motion for summary judgment dismissing the claim.
In December 2021, claimant Jeffrey Weichsel took his family to Gore Mountain — a state-owned ski resort located in the Adirondack Mountains. After a day of skiing, Weichsel slipped and fell in a parking area and was injured. Weichsel and his spouse, derivatively, brought the instant claim, alleging that defendants had notice of and failed to address the icy condition that caused Weichsel to fall. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the claim, arguing that Weichsel assumed the risk of injuries inherent in skiing, that claimants could not identify the cause of Weichsel's fall and that defendants had no actual or constructive notice of the alleged dangerous condition. The Court of Claims identified issues of fact underlying each of defendants' arguments and accordingly denied their motion. Defendants appeal.
Before addressing the legal concepts involved in this case, the circumstances surrounding this slip-and-fall involving snow and ice at a ski resort must be described. In doing so, we view the evidence in the light most favorable to claimants and accord them the benefit of every reasonable inference, without making any credibility determinations (see Carpenter v Nigro Cos., Inc., 203 AD3d 1419, 1420-1421 [3d Dept 2022]).
In Weichsel's deposition testimony — submitted by defendants in support of their motion — he explained that he arrived at Gore Mountain with his two children at around 9:00 a.m. on the day of the incident and parked his vehicle in the "main parking lot," which was "perfectly" maintained. At around 1:30 p.m., after a morning of alpine, or downhill, skiing, he and his children drove to a secondary base at the foot of a submountain of Gore — an area referred to as the Ski Bowl — for cross-country skiing lessons. The first parking that he encountered near the Ski Bowl was inaccessible, blocked by a "gigantic pile of snow." He entered the subject parking area via an entrance that was "very narrow" and "poorly plowed" and parked his vehicle. Weichsel testified that, when they arrived at the Ski Bowl, there were not many vehicles in the subject parking area, the surface of which he described as "packed snow" or "packed ice" with no bare spots and not "as much sand or salt as the main lodge." He also noted that it was "sunny and comfortable" out at the time. Although he was a season passholder for a group of mountains that included Gore and considered himself to be an "expert" skier, Weichsel had only been to Gore once before, and he had never been to the Ski Bowl or otherwise skied cross-country.
Weichsel and his children exited their vehicle, walked between 20 to 40 feet from where they were parked to the Ski Bowl lodge, paid for lessons and rented cross-country skiing equipment. After their lesson, the three [*2]skied until it was dark, at which time they went back to the lodge and returned their rental equipment. Weichsel testified that, upon exiting the lodge to return to their vehicle, at approximately 5:00 p.m., he "slipped on ice" and fell. Weichsel admitted that he "didn't really understand what happened" at the time, further citing "traumatic pain" upon falling that he believed impacted his recollection of the incident. He did recall that one of the first responders who arrived at the scene told him that "where [he] was was ice and extremely slippery" and that it was "clear [he] slipped on a divot . . . in the snow." Weichsel also had the occasion to observe his young children while the three waited for first responders, and the children slipped and fell in or around the same "slippery" spot that he did. Weichsel also testified that the first responders appeared "very worried about falling themselves" and that lodge staff members who came to his aid seemed similarly concerned for their own safety, cautioning one another to "be careful" because "it's slippery here."
Defendants also submitted the deposition testimony and affidavit of Gore Mountain's Nordic director. The director described the subject parking area as essentially a dirt shoulder on the road in front of the Ski Bowl lodge. Because the shoulder abuts the snow, many skiers with season passes ski directly onto the trails or to one of the chairlifts from the parking area, bypassing the lodge altogether. The director explained that, although Gore Mountain does plow, salt and sand both the main parking lot and the subject parking area, it cannot completely clear snow from the latter without scraping away dirt and damaging its surface. Additionally, for both environmental and ski-related reasons, Gore Mountain uses salt sparingly. The subject parking area and the walkway to the lodge were generally maintained by lodge staff members, who would "intermittently" inspect to see if salt or sand should be spread by hand or if shoveling is needed. According to the director, the subject parking area had not been plowed that day, but the walkway to the lodge and where it intersects with the parking area had been salted by hand that morning — inclusive of the spot where the director believed Weichsel fell.
The director described the surface of the subject parking area at the time of the incident as "being somewhat rough, choppy" and "covered with a thin layer of patchy snow," adding specifically that "there was some level of ice present" where Weichsel fell. He explained that the temperature had gone a little above freezing during the daylight hours and then dipped into the upper 20s in the "late afternoon" and that there had been a "bit of precipitation" — "kind of wet snow" — at some point prior to the incident. With the precipitation, changes in temperature and vehicles in and out of the parking area, its surface became "kind of broken up" and then "fr[oze] over." In his affidavit, the director further [*3]acknowledged that, given its elevation, the Ski Bowl, inclusive of the subject parking area, "is subject to frequent freeze/thaw cycles." An incident report completed by the director shortly following Weichsel's fall similarly described the "site conditions" or "surface at the scene" as an "[i]cy parking lot" and a "chopped icey [sic] surface." The director testified that he had no actual notice that the parking area was slippery or of anyone else falling that day or in the preceding days.
In light of those alleged facts, defendants urge that Weichsel assumed the risk of injuries that can occur at a winter sports venue, contending that he did not have to be actively skiing for the doctrine to apply. The primary assumption of risk doctrine provides that a voluntary participant in a sporting or recreational activity "consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d 471, 484 [1997]; see Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 95 [2023]). Although the doctrine "applies to any facet of the activity inherent in it" (Maddox v City of New York, 66 NY2d 270, 277 [1985] [internal quotation marks and citation omitted]), the doctrine also "must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation" (Trupia v Lake George Cent. School Dist., 14 NY3d 392, 395 [2010]; see Turcotte v Fell, 68 NY2d 432, 439 [1986]). Additionally, primary assumption of the risk generally does not extend to cases where persons are injured while traversing areas such as streets and sidewalks, as such application "would create an unwarranted diminution of the general duty of landowners — both public and private — to maintain their premises in a reasonably safe condition" (Custodi v Town of Amherst, 20 NY3d 83, 89 [2012]).
Here, Weichsel fell in a parking area at least partially intended for motorists and pedestrians entering and exiting the Ski Bowl lodge — whether or not those pedestrians planned to engage in a winter sport. Although there is some limited evidence regarding the option for season passholders who park in front of the lodge to "ski directly from their cars to the trails because the snow directly abuts the dirt parking area" (emphasis added), it cannot be concluded as a matter of law that the parking area itself was part of the "designated athletic or recreational venue" (Custodi v Town of Amherst, 20 NY3d at 88). Most significantly, it is undisputed that Weichsel fell at a time when he was finished skiing for the day, and he no longer had any ski equipment on or near his person. He was, instead, returning to his parked vehicle, intending to exit defendants' property entirely. As a matter of law, Weichsel was not engaged in any facet of skiing at the time that he was injured, and the primary assumption of risk doctrine is therefore inapplicable (see Hawkes v Catatonk [*4]Golf Club, 288 AD2d 528, 529 [3d Dept 2001]; Vogel v Venetz, 278 AD2d 489, 489 [2d Dept 2000]; compare Kannavos v Yung-Sam Ski, Ltd., 187 AD3d 730, 731 [2d Dept 2020]; Litz v Clinton Cent. Sch. Dist., 126 AD3d 1306, 1307-1308 [4th Dept 2015]). We therefore find that summary judgment to claimants on this issue is appropriate (see generally CPLR 3212 [b]; Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106, 111-112 [1984]).
Thus, in moving for summary judgment in this slip-and-fall case involving snow and ice, defendants were required to establish, prima facie, that they maintained their property in a reasonably safe condition and that they did not create the dangerous condition giving rise to the alleged injuries or have actual or constructive notice of such condition (see Vance v Burkhart, 229 AD3d 869, 870-871 [3d Dept 2024]; Benjamin v Court Jester Athletic Club, Ltd., 217 AD3d 1206, 1206 [3d Dept 2023]). Relevant here, "[c]onstructive notice may be established by showing that the condition was apparent, visible and existed for a sufficient time prior to the accident so as to allow the defendant[s] to discover and remedy the problem" (Guzman v State of New York, 221 AD3d 1107, 1108 [3d Dept 2023] [internal quotation marks and citations omitted]; see Wheat v Town of Forestburgh, 223 AD3d 1134, 1138 [3d Dept 2024]). "[A] defendant can also demonstrate entitlement to judgment as a matter of law by establishing that the [claimant] cannot identify the cause of his or her fall without engaging in speculation" (Mulligan v R & D Props. of N.Y. Inc., 162 AD3d 1301, 1301 [3d Dept 2018] [internal quotation marks and citation omitted]; see Martinez v Walmart Inc., 227 AD3d 1254, 1255 [3d Dept 2024]). However, "[t]hat does not mean that a [claimant] must have personal knowledge of the cause of his or her fall" (Pol v Gjonbalaj, 125 AD3d 955, 955 [2d Dept 2015] [internal quotation marks and citation omitted]), or that a claimant must "positively exclude every other possible cause of the accident" (Gayle v City of New York, 92 NY2d 936, 937 [1998]). It is instead well established that a claimant can demonstrate proximate cause solely through circumstantial evidence, so long as that evidence "render[s] other causes sufficiently remote such that the jury can base its verdict on logical inferences drawn from the evidence, not merely on speculation" (Timmins v Benjamin, 77 AD3d 1254, 1256 [3d Dept 2010]; see Gayle v City of New York, 92 NY2d at 937; Pascucci v MPM Real Estate, LLC, 128 AD3d 1206, 1206 [3d Dept 2015]).

Initially, viewing the evidence in the light most favorable to claimants and resolving all reasonable inferences in their favor, a jury could conclude, without resorting to speculation, that the proximate cause of Weichsel's injuries was the choppy, icy surface conditions where he fell. These conditions were personally observed by Weichsel and the Nordic director, and they are further reflected in the incident report prepared following Weichsel's [*5]fall. To the extent that defendants argue that the incident report, as well as certain aspects of Weichsel's testimony, is inadmissible hearsay and thus may not be relied upon by claimants, we first note that such evidence was proffered by defendants in support of their own motion. In any event, inadmissible hearsay may be considered at the summary judgment stage where it exists alongside admissible evidence in support of the same argument (see Gardell v Arden Ave. Homeowners Assn., 228 AD3d 834, 836 [2d Dept 2024]; compare Chapman v Olean Gen. Hosp., 228 AD3d 1308, 1309 [4th Dept 2024]). In our view, defendants failed to show that claimants could not identify the cause of Weichsel's fall as a matter of law (see Gardell v Arden Ave. Homeowners Assn., 228 AD3d at 836; Bovee v Posniewski Enters., Inc., 206 AD3d 1112, 1113-1114 [3d Dept 2022]; Weed v Erie County Med. Ctr., 187 AD3d 1568, 1568 [4th Dept 2020]; compare Mulligan v R & D Props. of N.Y. Inc., 162 AD3d at 1302; Smith v Maloney, 91 AD3d 1259, 1259 [3d Dept 2012]; Barnes v Di Benedetto, 294 AD2d 655, 656-657 [3d Dept 2002]).[FN1]
As for defendants' maintenance and alleged notice, according to the director, the condition of the parking area's surface was readily visible at the time of Weichsel's fall. Lodge employees were charged with intermittently checking the condition of the parking area and the walkway to the lodge, and, the morning of the incident, employees identified the need for salt in the area where Weichsel fell. Employees spread some salt by hand at that time, in a limited area. There is no evidence that any additional checks were performed, notwithstanding defendants' knowledge of temperature fluctuations on the day of the incident. The parking area freezing over by late afternoon was also a recurring condition of which defendants had actual notice (see Vincent v Landi, 101 AD3d 1565, 1567 [3d Dept 2012]). Defendants were further aware that some amount of "wet" precipitation had fallen preceding the incident but could not establish when the parking area had last been plowed. We are not persuaded by defendants' assertion that, as a matter of law, the foregoing amounts to only a general awareness that icy conditions may exist (compare Pierson v North Colonie Cent. School Dist., 74 AD3d 1652, 1654-1655 [3d Dept 2010], lv denied 15 NY3d 715 [2010]). Defendants again did not meet their burden, as their own proof failed to eliminate all triable issues of fact as to maintenance and constructive notice (see Sodhi v Dollar Tree Stores, Inc., 175 AD3d 914, 916 [4th Dept 2019]; Hurley v City of Glens Falls, 160 AD3d 1188, 1189 [3d Dept 2018]; Riozzi v 30 Kingston Realty Corp., 112 AD3d 1033, 1034 [3d Dept 2013]; Califano v Dubonnet Hair Stylists, 96 AD3d 1290, 1291-1292 [3d Dept 2012]; compare Zimmer v County of Suffolk, 190 AD3d 898, 899 [2d Dept 2021]; Kulchinsky v Consumers Warehouse Ctr., Inc., 134 AD3d 1068, 1069 [2d Dept 2015]; Ravida v Stuyvesant Plaza, Inc., 101 AD3d 1421, 1421-1422 [3d [*6]Dept 2012]). Based on the foregoing, the Court of Claims properly denied defendants' motion for summary judgment dismissing the claim.
Pritzker, Lynch, Fisher and Powers, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by granting partial summary judgment to claimants dismissing defendants' primary assumption of risk affirmative defense, and, as so modified, affirmed.

Footnotes

Footnote 1: Claimants' opposition similarly raises issues of fact in this respect. In an affidavit authored after his deposition, Weichsel stated that, although he "d[id] not know what exactly [he] fell on, [he] was being cautious" even while wearing "hiking boots with a deep tread." He affirmed that "[t]he area where [he] fell consisted of a choppy, rutted, icy surface." Claimants also submitted an ambulance report from the incident, in which it is recounted that the "[p]atient states he was walking across the parking lot, which was icy, mis-steps, slide and rolled his ankle" (emphasis added). The meaning of this report language and any discrepancies between it, Weichsel's testimony and his affidavit are not amenable to summary resolution.