| |
|---|
| **Ravit v City of New York** |
| 2025 NY Slip Op 31027(U) |
| March 27, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 505458/2024 |
| Judge: Patria Frias-Colon |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS                    Part 25
HON. PATRIA FRIAS-COLÓN, J.S.C.
-------------------------------------------------------------------------X
Sam Ravit,

                                    PLAINTIFF,

                -against-

The City of New York and the New York City
Department of Parks and Recreation,

                                    DEFENDANTS.
-------------------------------------------------------------------------X

Index # 505458/2024
Cal. #s 31-32   Mot. Seq. #s 1-2

**DECISION/ORDER**

Recitation as per CPLR §§ 2219(a) and/or 3212(b) of papers considered on review of this motion:
NYSCEF Doc #s 7-11; 25-28 by Defendants
NYSCEF Doc #s 13-22; 29 by Plaintiff

Upon the foregoing cited papers and after considering oral argument on October 30, 2024, pursuant to CPLR §§ 3212, the Decision and Order on both the Defendants The City of New York and New York City Department of Parks and Recreation's ("City") Motion for Summary Judgment and dismissing Plaintiff's complaint (Motion Sequence # 1) is GRANTED and Plaintiff's Cross-Motion for Summary Judgment on the issue of liability as against the Defendants (Motion Sequence # 2) is DENIED.

**BACKGROUND**

On April 21, 2023, at approximately 4:00 p.m., Plaintiff was playing tennis at Manhattan Beach Park ("park"), which Defendants operated.[1] The park had six outdoor tennis courts that were enclosed by a fence.[2] Photographs reveal that the courts were covered in cracks[3] and the cracks were readily observable at first glance.[4] Plaintiff stated on the day of his injury, the court that he was playing on was dry and there was no issue with lighting.[5] While playing with his tennis partner, Plaintiff ran diagonally from right to left after the ball when he tripped and fell.[6] Specifically, Plaintiff's right foot got caught in a crack, he lost his balance, then his left foot got caught in another crack, and, ultimately, he fell.[7]

Defendants City filed their instant summary judgment motion on July 5, 2024.[8] The City argues that they are entitled to summary judgment because the Plaintiff assumed the risk of injury when he decided to play tennis on the cracked court despite being aware of its condition.[9] Plaintiff filed the instant cross-motion for summary judgment on August 27, 2024.[10] In opposition to the

---

[1] NYSCEF Doc. # 4 at p. 6, ¶ 4; NYSCEF Doc # 9 at p. 18, lines 23-25.
[2] NYSCEF Doc. # 9, lines 5-8.
[3] NYSCEF Doc. # 22.
[4] *Id.*
[5] NYSCEF Doc. # 9 at p. 22, lines 9-15.
[6] *Id.* at p. 22, lines 20-23; at p. 32, lines 32-10; at p. 34, lines 7-14.
[7] *Id.* at p. 32, lines 18-23; at p. 33, lines 18-23.
[8] NYSCEF Doc. # 7.
[9] *Id.* at pp. 10-16.
[10] NYSCEF Doc. # 13.

[* 1]

City's motion, Plaintiff argues he could not assume the risk when the true depth and width of the cracks on the court were concealed by negligent repair and maintenance.[11] Plaintiff further argues that he should be granted summary judgment on the issue of liability because the City breached their duty to maintain the court in a reasonably safe condition.[12] In reply, the City Defendants argue Plaintiff failed to rebut their showing was aware of the cracks on the court and assumed the risk of his accident[13] and failed to meet his *prima facie* burden for entitlement to summary judgment on the issue of liability.[14] In reply, Plaintiff argues the City did not rebut Plaintiff's assertion they created the alleged defect of the cracks in the court, said cracks were dangerous, nor that Plaintiff could assume the risk when the true depth and width of the cracks on the court were concealed by negligent repair and maintenance.[15]

## DISCUSSION

### Summary Judgment

A party moving for summary judgment bears the burden of making a *prima facie* showing of entitlement to judgment as a matter of law and must tender sufficient evidence in admissible form to demonstrate the absence of any material factual issues. *See* CPLR 3212 (b); *Alvarez v. Prospect Hospital*, 68 N.Y.2d 320, 324 (1986); *Zuckerman v. City of New York*, 49 N.Y.2d 557, 562 (1980); *Korn v. Korn*, 135 A.D.3d 1023, 1024 (3d Dept. 2016). Failure to make this *prima facie* showing requires denial of the motion. *See Alvarez*, 68 N.Y.2d at 324; *Winegrad v. New York University Medical Center*, 64 N.Y.2d 851, 853 (1985). Once this showing has been made, the burden shifts to the party opposing the motion to produce evidence in admissible form sufficient to establish an issue of material fact requiring a trial. *See* CPLR 3212; *Alvarez*, 68 N.Y.2d at 324; *Zuckerman*, 49 N.Y.2d at 562. "[A]verments merely stating conclusions, of fact or of law, are insufficient to defeat summary judgment." *Banco Popular North America v. Victory Taxi Management, Inc.*, 1 N.Y.3d 381, 383 (2004) (internal quotations omitted). The court must view the totality of evidence presented in the light most favorable to the nonmoving party and accord that party the benefit of every favorable inference. *See Fortune v. Raritan Building Services Corp.*, 175 A.D.3d 469, 470 (2d Dept. 2019); *Emigrant Bank v. Drimmer*, 171 A.D.3d 1132, 1134 (2d Dept. 2019).

### Primary Assumption of Risk

In the context of certain athletic activities, the primary assumption of risk doctrine states that "a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation." *Asprou v. Hellenic Orthodox Community of Astoria*, 185 A.D.3d 641, 642 (2d Dept. 2020) (internal quotation marks omitted). The doctrine is not an absolute defense. *See Id.* Rather, it defines the scope of duty that the property owner owes to the athletic participant. *See Custodi v. Town of Amherst*, 20 N.Y.3d 83, 87 (2012). A property owner must "exercise care to make the conditions as safe as they appear

---

[11] NYSCEF Doc. # 15 at pp. 12-15.
[12] *Id.* at pp. 10-12.
[13] NYSCEF Doc. # 25 at pp. 3-13.
[14] NYSCEF Doc. # 27 at pp. 14-17.
[15] NYSCEF Doc. # 29.

[* 2]

to be." *Asprou*, 185 A.D.3d at 643 (internal quotation marks omitted). "If the risks are perfectly obvious to the player, he or she has consented to them and the property owner has discharged its duty of care." *Krebs v. Town of Wallkill*, 84 A.D.3d 742, 743 (2d Dept. 2011), *lv denied* 17 N.Y.3d 710 (2011) (internal quotation marks omitted).

"The assumption of risk doctrine applies where a consenting participant in sporting and amusement activities is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks." *Bukowski v. Clarkson Univ.*, 19 N.Y.3d 353, 356 (2012) (internal quotation marks omitted). The doctrine applies to "risks involving less than optimal conditions" and those risks that are inherent to the sporting activity. *Id.* "Risks inherent in a sporting activity are those which are known, apparent, natural, or reasonably foreseeable consequences of the participation." *Asprou*, 185 A.D.3d at 642 (internal quotation marks omitted). This includes "the construction of the playing surface and any open and obvious condition on it." *Id.* at 643. "However, participants are not deemed to have assumed risks that are concealed or unreasonably increased over and above the usual dangers that are inherent in the sport" *Id.* In determining whether the primary assumption of risk applies, the Court does not consider whether the athletic participant was aware of specific defect or dangerous condition that caused the injury. *See Zhou v. Tuxedo Ridge, LLC*, 180 A.D.3d 960, 963 (2d Dept. 2020). Instead, the Court considers whether the athletic participant was "aware of the potential for injury of the mechanism from which the injury results." *Id.* The primary assumption of risk doctrine will apply, and therefore shield the property owner against liability, if the athletic participant has such an awareness. S*ee e.g. Cevetillo v. Town of Mount Pleasant*, 262 A.D.2d 517, 518 (2d Dept 1999).

Specifically concerning injuries in tennis court, courts have consistently held that property owners can successfully raise the defense where the athlete knew, or should have known, about the obvious subpar condition of a tennis court. Perhaps the most straightforward explanation comes from *Cevetillo*, where the Court found "plaintiff was injured when she tripped on a crack in the tennis court surface. The court surface is the playing field directly used in playing outdoor tennis, and the plaintiff is therefore deemed to have assumed the risk of injury." *Id.* at 518. Similarly, the doctrine applied when "plaintiff alleged that he tripped over a two-to-four-inch-deep hole that was concealed inside a long crack, which was approximately seven feet long and between three to eight inches wide, in the asphalt playing surface." *Maharaj v. City of New York*, 200 A.D.3d 769, 769 (2d Dept. 2021). The Court in *Maharaj* explained that the crack in the tennis court was "clearly visible," i.e. it was of no consequence that the hole itself was concealed by the crack. *See Id.* at 770. *Cevetillo* and *Maharaj* are just two on the list of illustrative cases.[16]

---

[16] *See e.g. Wilck v. Country Pointe at Dix Hills Homeowners Assn., Inc.*, 111 A.D.3d 822, 823 (2d Dept. 2013) ("crack in the surface of the [tennis] court"); *Sammut v. City of New York*, 37 A.D.3d 811, 812 (2d Dept. 2007) ("the record reveals that the crack [on the tennis court] was open and obvious"); *Gabak v. Finger Lakes Tennis Club*, 238 A.D.2d 945, 945 (4th Dept. 1997) ("tennis court was wet because of a leaky roof"); *see also e.g. Cruz v. City of New York*, 197 A.D.3d 555, 556 (2d Dept. 2021) ("crack or hole in the surface of the basketball court which allegedly caused the plaintiff's accident was clearly visible and the somewhat irregular nature of the surface was apparent"); *Felton v. City of New York*, 106 A.D.3d 488, 488 (1st Dept. 2013) ("the [basketball] court was cracked, repaired and uneven"); *Bendig v. Bethpage Union Free Sch. Dist.*, 74 A.D.3d 1263, 1264 (2d Dept. 2010) (plaintiff "assumed the risk by voluntarily playing tennis on the subject court despite her awareness that the court had fixed net winder handles with which she could come into contact during the course of her tennis game"); *Lincoln v. Canastota Cent. Sch. Dist.*, 53 A.D.3d 851, 852 (3d Dept. 2008) ("the basketball court was in a state of significant disrepair, including uneven areas and cracks in the surface that were open and obvious"); *cf. Cronson v. Town of N. Hempstead*, 245 A.D.2d 331, 331 (2d Dept. 1997) ("[u]nder the circumstances of this case, and considering that the claimed dangerous condition of the tennis court was allegedly unseen by the plaintiff, as well as by a representative of the defendant, we find that

[* 3]

### Defendant City's Summary Judgment Motion

Here, Defendants carried their initial burden in showing that Plaintiff was aware of the risk, as they cite to various parts of Plaintiff's GML § 50-h hearing transcript where Plaintiff repeatedly indicated that he was aware of the cracks on the court.[17] During the hearing, Plaintiff stated the tennis courts at the park were "covered by the cracks,"[18] and that the cracks were "everywhere."[19] When asked if he was "aware that the court [that he was] playing on that day had cracks in it," Plaintiff responded "yes."[20] Defendants also submitted photographs showing a plethora of plainly visible cracks that span multiple courts.[21] Moreover, the weather in no way obscured the cracks as the ground was dry and there was adequate lighting.[22] Taken together, this evidence points to the cracks being open and obvious to Plaintiff, and thus, his decision to play on the court constituted his consent to assume the risk that the cracks presented. *See Bukowski*, 19 N.Y.3d at 356; *see e.g. Cruz*, 197 A.D.3d at 556; *Philius v City of New York*, 161 A.D.3d 787, 789 (2d Dept. 2018). As Defendants have met their burden, Plaintiff must now "produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action." *Alvarez,* 68 N.Y.2d at 324.

### Breach of Duty to Keep Courts in Safe Condition

Plaintiff's contention that Defendants had an obligation to maintain the courts in a reasonably safe condition misstates the law under these circumstances.[23] Plaintiff cites to both *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976) and *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837 (1986) for the proposition that a property owner has a duty to maintain the property in a safe condition, and with adequate notice, will be liable for dangerous conditions that cause an injury. While that is considered boiler-plate precedent, neither of Plaintiff's cited cases involves an injury stemming from an athletic activity occurring on a playing surface specifically designed for that activity. Distinguishing those cases from the instant matter, the primary assumption of risk doctrine is available to the Defendants herein.[24] To be clear, the doctrine applies only to injuries occurring in an athletic context. *See Id.* Determining whether the primary assumption of risk defense applies is an analysis separate from whether the defendant had adequate notice.[25] Assuming Defendants had notice of the cracks and failed to remedy them, Plaintiff would

---

there is an issue of fact as to whether the doctrine of assumption of the risk applies").

[17] NYSCEF Doc. # 7 at ¶¶ 8-10; NYSCEF Doc # 25 at ¶¶ 6-7.

[18] NYSCEF Doc. # 9 at p. 37, line 14.

[19] *Id.* at p. 38, line 7.

[20] *Id.* at p. 39, lines 10-11.

[21] NYSCEF Doc. # 8 at pp. 4-12.

[22] NYSCEF Doc. # 9 at p. 22, lines 9-15.

[23] NYSCEF Doc. # 15 at ¶¶ 38-48; NYSCEF Doc # 29 at ¶¶ 4, 26-27.

[24] S*ee Trupia v. Lake George Cent. Sch. Dist.*, 14 N.Y.3d 392, 395 (2010) ("The doctrine of assumption of risk does not, and cannot, sit comfortably with comparative causation. In the end, its retention is most persuasively justified not on the ground of doctrinal or practical compatibility, but simply for its utility in "facilitating free and vigorous participation in athletic activities". We have recognized that athletic and recreative activities possess enormous social value, even while they involve significantly heightened risks, and have employed the notion that these risks may be voluntarily assumed to preserve these beneficial pursuits as against the prohibitive liability to which they would otherwise give rise. We have not applied the doctrine outside of this limited context and it is clear that its application must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation that the Legislature has deemed applicable to "any action to recover damages for personal injury, injury to property, or wrongful death").

[25] S*ee e.g. Asprou*, 185 A.D.3d at 643; *Herman v. Lifeplex, LLC*, 106 A.D.3d 1050, 1051 (2d Dept. 2013); *Miskanic*

[* 4]

still be required to show that the primary assumption of risk doctrine did not apply.[26] Here, Plaintiff has not made such a showing.

### Danger Obscured by Sealant

Plaintiff's argument that Defendants negligently maintained and repaired the courts by using a sealant that concealed the true danger of the cracks, correctly states the law yet misstates the evidence.[27] Plaintiff is correct that an athletic participant does not assume the risk of concealed dangers. S*ee Asprou*, 185 A.D.3d at 643. He is also correct that a question of fact can exist where a sealant obscures the true depth of a crack. *See e.g. Warren v. Town of Hempstead*, 246 A.D.2d 536, 537 (2d Dept 1998). However, the facts herein are distinguishable. Relying on his affidavit,[28] Plaintiff asserted that a sealant obscured the true danger of the cracks, concealing them from view. However, it cannot be overlooked that Plaintiff submitted this affidavit one year after his § 50-h hearing and the hearing transcript squarely contradicts multiple assertions in his affidavit.

First, Plaintiff stated in his affidavit that he noticed a sealant covering cracks along the various courts when he arrived at the park,[29] yet he previously testified that he "didn't concentrate on those details."[30] Second, Plaintiff asserted in his affidavit that he believed that it was safe to play on the court because the sealant concealed the width and depth of the crack.[31] This conflicts with him previously saying that he was aware of the cracks[32] and that the cracks were "wide and deep."[33] Regardless, Plaintiff need not be aware of the specific crack that caused his injury, just that there were cracks on the court for him to have assumed the risk. *See Zhou*, 180 A.D.3d at 963. Third, Plaintiff stated that he "could not see the extent of the depth and width of the crack until [he] fell,"[34] indicating that Plaintiff knew what caused his fall. This is at odds with the hearing transcript when he acknowledged that he "did [not] look back to see what caused [his] fall."[35]

Here, "Plaintiff offer[s] no explanation why his affidavit, which was prepared [one year] after his deposition, contradicted his [§ 50-h hearing] testimony. He cannot create an issue of fact [or show his entitlement to summary judgment] by making statements in an affidavit which completely contradict his prior sworn testimony without offering any explanation for the contradiction[s]." *Zylinski v. Garito Contr.*, 268 A.D.2d 427, 428 (2d Dept. 2000) (internal quotation marks omitted) (affidavit prepared nine months after the deposition); *see e.g. Bryant v. Town of Brookhaven*, 135 A.D.3d 801, 803 (2d Dept. 2016). Similarly, Plaintiff's reliance on photographs of the tennis court does not serve to support his position. Plaintiff proffers through his attorney's affirmation[36] and in his affidavit[37] that the specific cracks that caused his fall were

---

[26] *See e.g. DiBenedetto v. Town Sports Intl., LLC*, 118 A.D.3d 663, 664 (2d Dept. 2014); *Paone v. County of Suffolk*, 251 A.D.2d 563, 564 (2d Dept. 1998).
[27] NYSCEF Doc. # 15 at ¶¶ 49-63; NYSCEF Doc # 29 at ¶¶ 27-34.
[28] NYSCEF Doc. # 18.
[29] *Id.* at ¶ 7.
[30] NYSCEF Doc. # 9 at p. 30, lines 16-17.
[31] NYSCEF Doc. # 18 at ¶¶ 14-16.
[32] NYSCEF Doc. # 9 at p. 39, lines 10-11.
[33] *Id.* at p. 38, lines 23-24.
[34] NYSCEF Doc. # 18 at ¶ 17.
[35] NYSCEF Doc. # 9 at p. 40, lines 15-19.
[36] NYSCEF Doc. # 15 at ¶¶ 23-29, 50, 55.
[37] NYSCEF Doc. # 18 at ¶15.

5

[* 5]

obscured, thus he could not appreciate the dangerous condition of the court. As established by precedent, whether or not the specific crack or cracks that caused the Plaintiff's fall were concealed, is irrelevant. "It is not necessary that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results." *Zhou*, 180 A.D.3d at 963 (internal quotation marks omitted). Further, the submitted photographs[38] show various areas of the tennis court, depicting the general nature of the tennis courts and what Plaintiff saw when he decided to play on the day of this injury. These photographs show numerous readily identifiable cracks on the court.[39] Some have sealant,[40] doing little to obscure the cracks, yet others do not.[41] It is axiomatic that Plaintiff accepted that fact that he was playing on a cracked court simply by deciding to play tennis there on that day.

Moreover, the result would not change even assuming the Court were to consider only the specific cracks that Plaintiff now alleges caused his fall. The photograph that Plaintiff submitted depicting the crack that purportedly caught his left foot has no sealant,[42] while the photograph that shows the crack that purportedly caught his right foot has some sealant, in and around it, yet the crack is still readily apparent.[43] The cracks in both photographs are obvious at first glance and, to say that the subject cracks were somehow hidden or obscured, would impose a meaning that the images themselves do not support.

### *Plaintiff's Sub-Arguments*

Plaintiff intersperses the following sub-arguments in his papers that, while not affecting the court's decision, will be addressed in the interest of completeness. First, Plaintiff asserts that Defendants made negligent repairs to the tennis courts,[44] yet points to no evidence other than the cracks, themselves, in support. Contrast this with *Warren*, where there was an issue of fact about whether a sealant hid the depth and degree of a crack on a basketball court. *Warren*, 246 A.D.2d at 537. The Plaintiff in *Warren* submitted an affidavit from an expert who averred that the sealant "disguise[d] the depth and extent of the cracks without curing the problem, thus misleading the players and depart[ing] from good and accepted safe practice to safely maintain, inspect and protect the public from the hazardous condition." *Id.* at 536. Absent such supporting evidence, conclusory opinions are insufficient to defeat Defendants' motion for summary judgment. *See Seyfried v. Greenspan*, 92 A.D.2d 563, 565 (2d Dept. 1983).

Second, citing his affidavit, Plaintiff notes he had not been to the park for more than a year before his injury.[45] This suggests Plaintiff was no longer aware of the cracks as they had been filled with sealant during the year-plus that he was not at the park. However, such assertion is belied by Plaintiff's § 50-h hearing testimony where he stated that he played on the tennis courts at the park approximately five times in 2023.[46] The issue of whether this was Plaintiff's first time

---

[38] NYSCEF Doc. # 22.
[39] *Id.*
[40] *Id.* at pp. 2-6, 8, 12.
[41] *Id.* at pp. 7, 9-11.
[42] NYSCEF Doc. # 21.
[43] NYSCEF Doc. # 20.
[44] NYSCEF Doc. # 15 at ¶¶ 6-7, 22, 44-46, 62; NYSCEF Doc. # 29 at ¶¶ 27-34.
[45] NYSCEF Doc. # 15 at ¶¶ 16, 54; NYSCEF Doc. # 29 at ¶¶ 18-20, 31.
[46] NYSCEF Doc. # 9 at p. 20, lines 12-18.

[* 6]

playing at the park is inconsequential. The gravamen is whether Plaintiff noticed the cracks before he started playing that day. As discussed above, both his hearing testimony[47] and the submitted photographs[48] confirm that the cracks were openly visible.

Third, Plaintiff contends that a ruling in favor of Defendants "would in essence allow the Defendants to install visible spike strips on the Court, and if they were at all visible, avoid summary judgment."[49] Procedurally, this argument is improperly before the Court because it appears for the first time in Plaintiff's reply papers. *See Harleysville Ins. Co. v. Rosario*, 17 A.D.3d 677, 677-678 (2d Dept 2005). Even if it were properly made, this contention misapprehends the law, as "participants are not deemed to have assumed risks that unreasonably increased over and above the usual dangers that are inherent in the sport." *Asprou*, 185 A.D.3d at 643. Nor are they "deemed to have assumed the risks of reckless or intentional conduct." *Morgan v. State*, 90 N.Y.2d 471, 485 (1997). It goes without saying that laying spike strips on the court is an intentional act that creates a danger far exceeding those expected when playing tennis.

As a result of Plaintiff failing to raise a triable issue of fact, the Defendants are entitled to summary judgment on their motion and the Plaintiff's cross-motion is moot. All relief not expressly granted herein has been considered and is denied.

Based on the foregoing, pursuant to CPLR 3212, the City Defendants' motion (Mot. Seq. # 1) for summary judgment is granted. Plaintiff's complaint as against these Defendants is hereby dismissed.

By virtue of the Court granting Defendants' motion for summary judgment, Plaintiff's motion (Mot. Seq. # 2) for partial summary judgment on the issue of liability is denied.

Defendants' counsel is directed to electronically serve a copy of this Decision and Order with Notice of Entry on the Plaintiff's counsel and to electronically file an affidavit of service with the Kings County Clerk.

This constitutes the Decision and Order of the Court.

Date:   March 27, 2025
        Brooklyn, New York

_____
Hon. Patria Frias-Colón, J.S.C.

---

[47] *Id.* at p. 39, lines 10-11.
[48] NYSCEF Doc. #s 20-22.
[49] NYSCEF Doc. # 29 at ¶ 4.

[* 7]